```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
FRANK D. SEINFELD,                       :
                                         :
                    Plaintiff,           :   02 CIV. 5018 (DLC)
                                         :
          -v-                            :   OPINION AND ORDER
                                         :
JAMES C. ALLEN; JUDITH AREEN; CARL J.    :
AYCOCK; RONALD R. BEAUMONT; MAX E.       :
BOBBIT; BERNARD J. EBBERS; FRANCESCO     :
GALESI; STILES A. KELLETT; GORDON S.     :
MACKLIN; BERT C. ROBERTS, JR.; JOHN W.   :
SIDGMORE; SCOTT D. SULLIVAN; LAWRENCE    :
C. TUCKER; BANK OF AMERICA, N.A.; and    :
WORLDCOM, INC.,                          :
                                         :
                    Defendants.          :
-----------------------------------------X
```

Appearances:

For plaintiff:
A. Arnold Gershon
Chris Mularadelis
A. Arnold Gershon P.C.
1450 Broadway, 14th Floor
New York, New York 10018

For defendant Bank of America, N.A.:
Gregory A. Markel
Jason M. Halper
Stacey A. Lara
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, New York 10038

For the Director Defendants:
Pamela Rogers Chepiga
Andrew Rhys Davies
Allen & Overy LLP
1221 Avenue of the Americas
New York 10020

For defendant Bert C. Roberts:
George E. Ridge
Cooper, Ridge & Lantinberg, P.A.
200 West Forsyth Street, Suite 1200
Jacksonville, Florida 32202

For defendant Bernard J. Ebbers:
Lyndon M. Tretter
David F. Wertheimer
Hogan & Hartson LLP
875 Third Avenue
New York, New York 10022

DENISE COTE, District Judge:

This Opinion considers motions to dismiss this derivative action related to the events underlying the financial collapse of WorldCom, Inc. ("WorldCom").  This action was filed on June 27, 2002 by Frank D. Seinfeld (the "Shareholder"), owner of an unspecified number of WorldCom shares.  The original Verified Complaint pled claims under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and Georgia common law.  The Verified Amended Complaint ("Complaint"), filed August 17, 2004, retains only state law claims of breach of fiduciary duty and commission of waste against various directors and officers of WorldCom and a claim of aiding and abetting a breach of fiduciary duty against Bank of America, N.A. ("BOA").[1]  On November 12, 2004, defendants James A. Allen, Judith Areen, Carl J. Aycock, Max E. Bobbitt, Stiles A. Kellett, Jr., Gordon S. Macklin, the Estate of John Sidgmore, and Lawrence C. Tucker (collectively, the "Director Defendants"), all former directors of WorldCom, filed a joint motion to dismiss.  Former WorldCom board member and chief executive officer Bernard J. Ebbers ("Ebbers") joined the Director Defendants' motion.  Former WorldCom chairman Bert

---

[1] The Complaint also lists WorldCom as a defendant.  No claim against it is specified, however, so this Opinion will treat WorldCom as a nominal defendant only.

2

C. Roberts, Jr. ("Roberts") and BOA filed separate motions to dismiss.[2]

For the reasons stated below, all motions to dismiss are granted on the basis that derivative actions against former directors, officers, and lenders arising from events predating or contemporaneous with WorldCom's bankruptcy proceedings are barred by WorldCom's Modified Second Amended Joint Plan of Reorganization (the "Plan") of October 21, 2003. In addition, the request of plaintiff in his opposition brief to be permitted to replead in the event of dismissal is denied.

Background

The Complaint alleges the following facts. Bernard J. Ebbers was both CEO and a board member of WorldCom at the time of the events in question. By early 2000, Ebbers had taken out loans from BOA totaling approximately $330 million. Ebbers' debt was secured by 11.6 million shares of his own WorldCom stock. On April 17, 2000, as the share price of WorldCom stock declined, BOA began making margin calls on Ebbers' loans. From September through December of 2000, WorldCom loaned Ebbers a total of $100 million to cover his personal debts, secured by three promissory notes payable on demand. In November 2000 and February 2001, the company guaranteed Ebbers' loans to BOA. Ebbers promised to pay

---

[2]WorldCom filed no motion to dismiss. This action has been stayed against defendant Scott Sullivan, former chief financial officer of WorldCom, pending the resolution of criminal proceedings against him. Ronald R. Beaumont and Francesco Galesi are no longer defendants.

3

the company if it were to make payments to BOA pursuant to the guarantees.  WorldCom received no consideration for these guarantees save Ebbers' continuing service as an officer of the company and, later, avoidance of BOA's demand for payment under previous guarantees.  The company's proxy statements for 2001 and 2002 represent that the guarantees were made as a result of the pressure on the price of WorldCom stock and the margin calls faced by Ebbers.  To fulfill its obligations under the guarantees, WorldCom paid BOA nearly $199 million between April 12, 2001 and February 5, 2002.

As noted in the Declaration of George E. Ridge submitted with Roberts' motion to dismiss, on July 21, 2002, less than a month after Shareholder filed his initial complaint in this action, the company filed for bankruptcy.  On October 17, 2002, in response to an Order to Show Cause of August 20, 2002, this action was stayed pending WorldCom's bankruptcy proceedings. WorldCom's Plan was confirmed by the Honorable Albert J. Gonzalez on October 31, 2003, and WorldCom emerged from bankruptcy on April 20, 2004, the date the Plan became effective.  Also on April 20, WorldCom merged with MCI, Inc., formerly its wholly owned subsidiary, and the name of the combined entity became MCI, Inc. ("MCI").  On July 9, 2004, MCI filed a lawsuit against Ebbers to recover the money it had expended to pay BOA for Ebbers' loans.  The Plan and MCI's complaint against Ebbers were submitted as materials in support of Roberts' motion to dismiss.

The Shareholder alleges that the loans to Ebbers and guarantees of his debt were void <u>ab initio</u> under Georgia law.  He

4

brings a derivative action against the Director Defendants and BOA. He alleges that, by approving the guarantees, the Director Defendants violated their fiduciary duties of loyalty and good faith to WorldCom and committed waste. He also alleges that BOA aided and abetted a breach of fiduciary duty by "knowingly participat[ing] in or join[ing] in an enterprise whereby [WorldCom's] directors violated their fiduciary obligations, and it thereby reaped a benefit."

The Director Defendants, Roberts, and Ebbers now move for dismissal on three independent grounds: First, they submit that the Shareholder failed to make a demand on WorldCom's board of directors before filing suit, as required under Ga. Code Ann. § 14-2-742.[3] Second, they argue that WorldCom's bankruptcy filing vested any claims asserted by the Shareholder on behalf of WorldCom in the bankruptcy estate and, ultimately, in the reorganized entity, MCI, barring the prosecution of any derivative lawsuit. Third, they argue that, because WorldCom merged into MCI, the Shareholder no longer owns shares in WorldCom and therefore does not meet the continuous stock ownership requirement for maintaining a derivative action under Georgia law. BOA has filed its own motion to dismiss on the

---

[3] WorldCom was incorporated in the State of Georgia, and the applicable law of pre-suit demand is governed by the law of the state of incorporation. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991). Rule 23.1 imposes an additional pleading requirement for derivative actions. The complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Rule 23.1, Fed. R. Civ. P.

5

basis that Georgia law does not recognize a cause of action for aiding and abetting a breach of fiduciary duty.

Because the Complaint must be dismissed on the ground that WorldCom's bankruptcy extinguished the Shareholder's right to bring a derivative action against all persons in respect to whom WorldCom retained causes of action that were vested exclusively in the bankruptcy estate, it is unnecessary to reach the other grounds urged by the movants.

Discussion

A derivative action "permits an individual shareholder to bring 'suit to enforce a corporate cause of action against officers, directors, and third parties.'" Scalisi v. Fund Asset Management, L.P., 380 F.3d 133, 138 (2d Cir. 2004) (citing Kamen, 500 at 95). "Thus, a derivative action permits an individual shareholder to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." Id. (citation omitted). That the present lawsuit is a derivative action is undisputed; it is described as such on the face of the Complaint. It is a derivative action in substance as well as form: the requested relief is damages and an equitable accounting on behalf of WorldCom, and the Complaint alleges no injury specific to the Shareholder. See Grace Bros., Ltd. v. Farley Indus., Inc., 450 S.E.2d 814, 819 (Ga. 1994); cf. Tooley v. Donaldson, Lufkin & Jenrette, 845 A.2d 1031, 1033 (Del. 2004) (en banc).

A bankruptcy filing temporarily vests the property of the

bankrupt corporation, known as the debtor, in a bankruptcy estate. The bankruptcy estate is an entity that is legally separate from the debtor. In re Jamko, Inc., 240 F.3d 1312, 1313 n.1 (11th Cir. 2001). It comprises, with few exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1). Such property "includes all kinds of property, including tangible or intangible property [and] causes of action." Mitchell Excavators, Inc. v. Mitchell, 734 F.2d 129, 131 (2d Cir. 1984) (quoting H.R. Rep. No. 595, 95th Cong. 2d Sess. 367). Section 541(a)(1) of the bankruptcy code "has been construed to prevent individual shareholders and creditors from suing to enforce a right of the corporation when that corporation is in bankruptcy." Cumberland Oil Corp. v. Thropp, 791 F.2d 1037, 1042 (2d Cir. 1986). "[W]hile normally the fiduciary obligation of officers, directors, and shareholders 'is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee.'" Mitchell, 734 F.2d at 131 (quoting Pepper v. Litton, 308 U.S. 295, 306-07 (1939)).[4]

Important policy reasons exist for assigning derivative

---

[4] Although much of the case law discusses bankruptcy trustees, it is often the case, and was with WorldCom, that the debtor administers the bankruptcy estate during Chapter 11 proceedings as a "debtor in possession." The appointment of a trustee in Chapter 11 cases is actually "exceptional." Official Comm. of Unsecured Creditors of Cybergenics Corp v. Chinery, 330 F.3d 548, 573 (3d Cir. 2003). If no trustee is appointed, the debtor in possession exercises the powers that would otherwise be exercised by the trustee and has the same fiduciary duties toward the estate. Id. (citing 11 U.S.C. § 1107(a)).

7

causes of action to the bankruptcy estate: "Making the pursuit of certain causes of action the sole responsibility of the trustee in bankruptcy furthers the fundamental bankruptcy policy of equitable distribution among creditors. It allows the trustee to exercise the 'strong arm' power and recover corporate assets for the benefit of all creditors of the corporation." Cumberland, 791 F.2d at 1042 (citing In re MortgageAmerica Corp., 714 F.2d 1266, 1275 (5th Cir. 1983)). If a trustee voluntarily abandons a claim,[5] or is ordered by the bankruptcy court to abandon a claim, a shareholder may have standing to assert it. Mitchell, 734 F.2d at 131-32. In either event, "some proceeding in the bankruptcy court must take place before a shareholder can assert [a derivative] right directly." Id. at 132.

The original complaint in this action was filed before WorldCom entered bankruptcy, and the action was thus properly stayed when WorldCom filed for bankruptcy. Throughout the bankruptcy proceeding, the debtor in possession was unquestionably the only entity that had standing to pursue a claim on behalf of the bankruptcy estate without leave of the bankruptcy court. The issue is now whether the plaintiff may resume the prosecution of his derivative action now that WorldCom has emerged from bankruptcy.

A bankruptcy proceeding yields a bankruptcy plan "for the

---

[5] A trustee's decision not to pursue a claim does not constitute abandonment. See Gen. Dev. Corp. v. Atlantic Gulf Communities Corp., 179 B.R. 335, 339 (S.D. Fla 1995). The plaintiff does not raise an argument that the bankruptcy trustee (or subsequently, WorldCom) abandoned its claims against the defendants in any event.

8

adjustment of the debtor's debts." 11 U.S.C. § 941. The plan is generally submitted by the debtor itself, although the debtor, creditors, stockholders, or certain other persons may file a plan under certain circumstances. See id. § 1121 (regarding who may file a bankruptcy plan); id. § 1123 (describing what the plan is to contain). "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan by the bankruptcy court vests all of the property of the estate in the debtor." Id. § 1141(b). Subject to limited exceptions, "the provisions of a confirmed plan bind the debtor . . . and any creditor, equity security holder, or general partner in the debtor . . . whether or not such creditor, equity security holder, or general partner has accepted the plan." Id. § 1141(a).

The terms of the bankruptcy plan thus determine whether the right to assert WorldCom's claims against the defendants in this action continues to reside with the emerged debtor.

The Plan's Injunction states:

> Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against or Equity Interests in any or all of the Debtors and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, are permanently enjoined, on and after the Effective Date, from . . . commencing or contributing in any manner an action or other proceeding of any kind with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan . . . .

Plan ¶ 10.04 (emphasis supplied).

"Causes of action" is defined as:

9

> without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever, whether known or unknown, reduced to a judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, <u>assertable directly or derivatively</u>, existing or hereafter arising, in law, equity, or otherwise, <u>based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Cases</u>, including through the Effective Date.

Id. ¶ 1.23 (emphasis supplied).

The Plan further provides:

> [N]othing contained in the Plan or Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtors or the Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, . . . <u>Causes of Action against current or former directors, officers, professionals, agents, financial advisors, underwriters, lenders, or auditors relating to acts or omissions occurring prior to the Commencement Date</u>.

Id. ¶ 10.08 (emphasis supplied).

As the bankruptcy court recently concluded in regard to a derivative suit against former directors for issuing an unlawful dividend, the Plan bars derivative claims arising from events before WorldCom's filing for bankruptcy or during the bankruptcy proceedings, at least against the former directors who were defendants in that action. See In re WorldCom, Inc., No. 02-13533 (AJG), 2005 WL 949063, at *11 (Bankr. S.D.N.Y. Apr. 26, 2005) ("[A]ny such action commenced was property of the estate and upon the effective date became property of the reorganized Debtors."). As Paragraph 10.08 of the Plan makes clear, MCI, the reorganized debtor, has retained ownership of all causes of

10

action against former directors, officers, lenders,[6] and certain other persons. The Plan's definition of "cause of action" clearly includes derivative actions such as this one.[7] If the Shareholder had wished to press his claims on WorldCom's behalf, he should have petitioned the bankruptcy court to compel the debtor in possession to either bring suit or abandon the claim. See Mitchell, 734 F.2d at 132. He chose not to do so. The motions to dismiss are granted.

In addition, plaintiff's motion for leave to amend the Complaint is denied. The standards for amending a complaint are set forth in Rules 15(a) and 16, Fed. R. Civ. P. The governing

---

[6]Because WorldCom guaranteed Ebbers' loans from BOA, BOA likely qualifies as a lender to WorldCom under the language of the Plan. "A guaranty is a collateral promise to enter for the debt or obligation of another, and, absent language in the instrument to the contrary, a guarantor's liability is usually equal to that of the principal debtor." Am. Jur. 2d Bills and Notes § 487. The claim against BOA would be dismissed on the basis that Georgia does not recognize a claim for aiding and abetting a breach of fiduciary duty in any event. This Opinion incorporates by reference the reasoning set forth in In re WorldCom, Inc. Sec. Litig., 336 F. Supp. 2d 310, 317-18 (S.D.N.Y. 2004), which decided precisely the same issue under Georgia common law. See also Monroe v. Bd. of Regents of the Univ. Sys. of Cal., 602 S.E.2d 219, 224 (Ga. App. 2004) ("Georgia has never recognized a claim for aiding and abetting a breach of fiduciary duty.").

[7]Plaintiff makes the feeble argument that "'suits . . . assertable directly or derivatively' refers to suits that the Company can assert derivatively, not to actions by stockholders suing on its behalf." He provides the example of an action for civil conspiracy, which "is a derivative, rather than independent, cause of action." (citing Treppel v. Biovail Corp., No 03 Civ. 3002 (PKL), 2004 WL 2339759, at *6 (S.D.N.Y. Oct. 15, 2004). Given the context, and in light of the fact that the counterpart to "derivatively" in the Plan's definition of "cause of action" is "directly," not "independently," the assertion that the language was crafted to encompass both independently actionable torts and those "connected to a separate underlying tort," id. at *17, is untenable as a matter of law.

11

law in this Circuit has been described in detail in In re Wireless Tel. Svcs. Antitrust Litig., No. 02 Civ. 2637(DLC), 2004 WL 2244502, at *4-*5 (S.D.N.Y. Oct. 6, 2004). That description is incorporated herein. Rule 16 governs this motion, as the date for amending the complaint has been set through a scheduling order. Rule 16 requires a party seeking to modify a scheduling order to show good cause. Plaintiff has not shown good cause why he should be allowed to amend his complaint at this late stage, having already done so once, on August 17, 2004 -- more than two years after the action was originally filed and well after the legal and factual landscape should have been entirely clear.

Conclusion

The plaintiff's motion to amend is denied. The motions to dismiss are granted. Because the defect in the Complaint applies equally to moving and non-moving defendants, the action is dismissed in its entirety. The Clerk of Court shall close the case.

SO ORDERED:

Dated:   New York, New York
         May 25, 2005

_____
DENISE COTE
United States District Judge